**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

**Michael Ammann,**

**Plaintiff,**

**-vs-**

**Buckeyes Contracting LLC,**

**Defendant.**

**Case No. 5:25-cv-01373**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending before the Court are Plaintiff Michael Ammann's ("Plaintiff") Motion for Default Judgment ("Plaintiff's Motion") and Defendant Buckeye Contracting LLC's ("Defendant") Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction, *Instanter*, Pending Leave of Court ("Defendant's Motion to Dismiss"). (Doc. Nos. 16, 21.) As part of Defendant's Reply in support of its Motion to Dismiss, Defendant included a Motion to Strike Portions of Plaintiff's Opposition ("Defendant's Motion to Strike") which Plaintiff opposed. (Doc. Nos. 23, 24.) For the following reasons, Plaintiff's Motion, Defendant's Motion to Dismiss and Defendant's Motion to Strike are denied as moot for lack of subject matter jurisdiction.

**I. Background**

Plaintiff's Complaint sets forth the following allegations. Plaintiff "is the assignee of all litigation claims held by Prop 3 LLC for two properties of which Prop3 is the titleholder." (Doc. No. 1, ¶ 3.) These properties include 942 Nela View Road, Cleveland Heights, OH 44112 and 3345 Sylvanhurst Road, Cleveland Heights, OH 441[12]. (*Id.*) Through this assignment, Plaintiff "is entitled to recover all damages, including compensatory and punitive damages, suffered by Prop3 LLC." (*Id.*)

"On or about July 7, 2024, [Defendant] entered into a residential remodeling contract for renovation work at 3345 Sylvanhurst Road." (*Id.*, ¶ 5.) "On or about July 18, 2024, [Defendant] entered into a second remodeling contract for renovation work at 942 Nela View Road." (*Id.*, ¶ 6.) "In both projects, [Defendant] performed only partial work, was paid in full for that partial performance." (*Id.*, ¶ 7.) Defendant "failed to complete the projects in a competent or workmanlike manner." (*Id.*) "Despite defective and incomplete performance, [Defendant] recorded the following false mechanic's liens:" "$3,194.28 recorded on September 24, 2024, against 3345 Sylvanhurst Road" and "$3,614.79 recorded on September 24, 2024, against 942 Nela View Road." (*Id.*, ¶ 8.)

According to Plaintiff, "[t]he liens are statutorily defective under Ohio Revised Code § 1311.06(A) because they were not filed by the contracting party[,]" "they fail to describe with required specificity the labor and materials furnished, stating only 'complete interior rehab[,]'" and they violate the requirement of a "just and true account" because the sworn lien amounts on the affidavits materially differ from the invoice breakdowns. (*Id.*, ¶¶ 9-11.) Plaintiff alleges that "[t]he liens are statutorily defective under Ohio Revised Code § 1311.07 because they were not properly served and perfected within the required time period[,]" "are statutorily defective under Ohio Revised Code § 1311.06(A)(2) because they lack a sworn, itemized statement of the work actually performed or materials furnished[,]" and "are statutorily defective under Ohio Revised Code § 1311.06(A)(3) because they fail to state the last date on which labor or materials were provided, as required to determine whether the filing was timely." (*Id.*, ¶¶ 12-14.)

Defendant "had a duty to ensure that any lien filed in the public record was truthful, accurate, and in compliance with Ohio law" but it "negligently caused false mechanic's liens to be recorded against properties owned by Prop3 LLC" (*Id.*, ¶¶ 18-19.) "The improper and invalid liens slandered

title and prevented the sale of both properties, directly damaging Prop3 LLC." (*Id.*, ¶ 15.) Plaintiff claims that Defendant's actions resulted in damages in excess of $200,000 "including lost profits, carrying costs, and pre-judgment interest." (*Id.*, ¶ 16.)

**II. Procedural History**

On July 1, 2025, Plaintiff, acting *pro se*, filed a Complaint in this Court alleging a state-law claim for "negligent slander of title/disparagement of property" against Defendant.[1] (*Id.*) Plaintiff brought this action under this Court's diversity jurisdiction, stating that he is a citizen of Texas, Defendant "is an Ohio limited liability company with a principal place of business in Ohio," and the amount in controversy exceeds $75,000. (*Id.*, ¶ 1.) On July 9, 2025, this Court issued an order explaining that it lacked sufficient information to ascertain whether it has diversity jurisdiction over the matter and ordered Plaintiff to file a supplement on the docket furnishing the Court with information as to Defendant's citizenship. (Doc. No. 3.) On July 28, 2025, Plaintiff filed his Supplement Regarding Diversity Jurisdiction ("the Supplement") as well as an Affidavit of Service. (Doc. Nos. 4, 5.) In the Supplement, Plaintiff represented that "Defendant Buckeyes Contracting LLC is wholly owned by Christopher Soles. Mr. Soles is a citizen of Ohio[.]" (Doc. No. 4.) The Affidavit is signed by Jorge Levitt who averred that he served the summons and complaint upon "Dominic Doe (refused last name) who is the Tenant of Buckeyes Contracting LLC." (Doc. No. 5.) Levitt averred that "Dominic rent[ed] this house from the party to this summons, said he will pass it on to the landlord." (*Id.*)

The same day, Plaintiff filed a Motion for Clerk's Entry of Default. (Doc. No. 8.) Therein,

[1] "To prove slander of title in Ohio, a plaintiff must show that the defendant (1) made a defamatory statement against the property of another, (2) which was false and malicious, and (3) caused actual or special damages." *Specialty Mins., Inc. v. Dunbar Mech., Inc.*, 164 F. App'x 539, 542 (6th Cir. 2005) (citing *Green v. Lemarr,* 744 N.E.2d 212, 224 (Ohio. App. 2d Dist. 2000)).

Plaintiff asserted that Defendant had been served with the Summons and Complaint on July 4, 2025 and had failed to file an answer or otherwise appear in this action within twenty-one (21) days as required by Rule 12 of the Federal Rules of Civil Procedure. (*Id.*) Plaintiff asked the Clerk of Court to enter default against Defendant under Rule 55(a) of the Federal Rules of Civil Procedure. (*Id.*) This Court denied Plaintiff's Motion for Clerk's Entry of Default finding that Plaintiff had not established that he had served Defendant. (Doc. No. 9.)

On August 1, 2025, this Court referred the case to Magistrate Judge Jennifer Dowdell Armstrong for general pretrial supervision. (Doc. No. 10.) On September 7, 2025, Plaintiff filed an Affidavit of Service with Notice of Receipt from the Ohio Secretary of State and Application to Clerk for Entry of Default. (Doc. Nos. 11-12.) On September 12, 2025, Judge Armstrong ordered Plaintiff to file a supplemental brief, "including an affidavit or other appropriate supporting documentation, establishing that: (1) service of Defendant Buckeyes Contracting, LLC via the Ohio Secretary of State was authorized under the Federal Rules of Civil Procedure and Ohio law; and (2) such service actually occurred here." *See* Non-Doc Order dated Sept. 12, 2025. In the Order, Judge Armstrong explained that:

> Plaintiff ha[d] not established that Defendant's agent [could not] be found or that Defendant failed to maintain an agent, nor ha[d] Plaintiff submitted a certified mail receipt establishing that service of process was completed. In addition, the Court's review of the Ohio Secretary of State's Business Search database d[id] not reflect that an entity named "Buckeyes Contracting LLC" is or was registered to do business in Ohio.

*Id.*

On September 21, 2025, Plaintiff filed a Supplement to Application to Enter Default, wherein he stated that the Ohio Secretary of State forwarded the summons and complaint to the address listed on Plaintiff's contract with Defendant, 404 Abbyshire Road, Akron Ohio 44319, because Defendant

had failed to appoint an agent for service of process. (Doc. No. 13.) The next day, the Clerk entered default as to Defendant. (Doc. No. 14.)

On October 28, 2025, this Court issued an order noting that Plaintiff had not filed a Motion for Default Judgment and ordered Plaintiff to do so within thirty (30) days or show cause why Defendant should not be dismissed without prejudice. (Doc. No. 15.) Plaintiff's Motion was filed on November 28, 2025. (Doc. No. 16.) Defendant filed its Opposition on January 12, 2026 to which Plaintiff replied on January 24, 2026. (Doc. Nos. 19, 20.) On February 5, 2026, Defendant filed its Motion to Dismiss (Doc. No. 21.) Plaintiff filed his Opposition on March 8, 2026, and on March 15, 2026, Defendant filed its Reply and Motion to Strike. (Doc. Nos. 22, 23.) On April 9, 2026, Plaintiff filed his Opposition to Defendant's Motion to Strike. (Doc. No. 24.) These motions are ripe for this Court's review and decision.

## III. Standard of Review

This Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)). "And on that score, a federal court's subject-matter jurisdiction is restricted, both by operation of the Constitution, and by federal statutes." *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020) (citing *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018)). The first type of federal jurisdiction, diversity of citizenship, applies to cases of sufficient value between "citizens of different states." 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, the plaintiff must establish that he is a citizen of one state and all the defendants are citizens of states other than the state of which Plaintiff is a citizen and that "the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs." § 1332(a)(1).[2] The second type of federal jurisdiction relies on the presence of a federal question. This type of jurisdiction arises where a "well-pleaded Complaint establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983).

## IV. Analysis

Before this Court can assess the viability of Plaintiff's claims, Plaintiff must first establish that this case falls within the ambit of this Court's subject matter jurisdiction. *Miller*, 949 F.3d at 990 (citing *Kroll v. United States*, 58 F.3d 1087, 1092 (6th Cir. 1995)). Here, Plaintiff, asserting a single state-law claim, invokes the Court's diversity jurisdiction under Section 1332. *See* (Doc. No. 1, ¶ 1.) For purposes of this Memorandum Opinion and Order, this Court will assume complete diversity exists. Plaintiff has represented that he is a citizen of Texas and that Defendant is a citizen of Ohio.[3] Thus, the question for this Court's consideration is whether Plaintiff has made a claim for damages sufficient to exceed the $75,000 amount in controversy requirement.

"In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). "When determining whether the amount in controversy has been

[2] The citizenship of a natural person equates to his domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990).

[3] In the Motion to Dismiss, Defendant argues that the assignment of Prop3's interests to Plaintiff is a sham intended to (1) destroy diversity and (2) allow Plaintiff to circumvent the laws requiring LLCs to be represented by counsel. (Doc. No. 21, PageID#s 114-117.) As to the citizenship issue, Defendant does not include the citizenship of Prop3's members or owners in its filings, so this Court cannot decide whether diversity would be destroyed if the assignment was deemed improper. This Court need not evaluate the unauthorized practice of law argument because, for the reasons set forth herein, it finds that it lacks subject matter jurisdiction.

satisfied, we examine the complaint at the time it was filed." *Id*. (citing *Worthams v. Atlanta Life Ins. Co.,* 533 F.2d 994, 997 (6th Cir.1976). "Jurisdiction, once established, cannot be destroyed by a subsequent change in events." *Id*.[4] As the party invoking federal jurisdiction, Plaintiff bears the burden of satisfying the requirements of diversity jurisdiction. *See Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010) ("[A]s the party invoking federal jurisdiction, [Plaintiff] bore the burden of satisfying the requirements of federal jurisdiction[.]").

Plaintiff cannot rely on speculation to satisfy the amount in controversy requirement. *See Caldwell v. OHTEX Energy Co., LLC*, 2011 WL 1465997, at *3 (S.D. Ohio Apr. 18, 2011) ("[O]verly speculative assertions as to the value of amount-in-controversy are not acceptable.") (citing *Brown v. Randell*, 852 F.2d 568 (table), 1988 WL 76544, at *1 (6th Cir. July 22, 1988)). The Report and Recommendation in *Burton v. Nationstar Mortgage* is illustrative. 2024 WL 4555342, at *1 (W.D. Mich. Aug. 26, 2024). In *Burton*, the magistrate judge recommended that the *pro se* plaintiff's data breach claim be remanded where the plaintiff had not alleged that anyone had used his personal data for "nefarious purposes." *Id*. at *2.[5] The court explained that the plaintiff's "damage request [was] not an appropriate basis for establishing the jurisdictional amount because it [was] based on nothing more than speculation." *Id*. More importantly, the court in *Burton* collected several cases in the Sixth

[4] Defendant raises arguments as to the amount in controversy in its Motion to Dismiss. (Doc. No. 21, PageID# 114.) However, Plaintiff moves to strike Defendant's Motion to Dismiss in its entirety, arguing that it was improperly filed because Defendant was in default at the time of filing. (Doc. No. 22, PageID# 137.) This Court has "an independent obligation to determine whether subject-matter jurisdiction exists," so it must assess subject matter jurisdiction regardless of whether Defendant's Motion to Dismiss was properly filed. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)). This Court need not reach the issue of whether the Motion to Dismiss is properly filed because it finds for reasons set forth herein that it lacks subject matter jurisdiction over Plaintiff's claim.

[5] In *Burton*, the district court never formally adopted the Report and Recommendation because the parties settled the case shortly after the Report and Recommendation was issued. *See* No. 1:24-cv-00761 (Doc. No. 22) (W.D. Mich. Sept. 12, 2024).

Circuit that affirm this proposition. *Id*. (citing *Johnson v. Hartwell*, 2018 WL 3997817, at *3 (E.D. Mich. Aug. 21, 2018) (finding the court lacked subject matter jurisdiction to adjudicate the plaintiff's claims because the plaintiff "d[id] not allege that she ha[d] suffered any injury resulting from [d]efendants' actions" and rejecting argument that the defendants "ha[d] caused harm with 'substantial potential economic damages....'"); *Kinch v. Chrysler Credit Corp.*, 367 F. Supp. 436, 439 (E.D. Tenn. 1973) (holding that the plaintiff's loss of earnings claims were "highly speculative and should bear little on [the court's] determination of jurisdictional amount"); and *Brown*, 852 F.2d 568 (table), 1988 WL 76544, at *1 (holding that the plaintiff's claim for royalties was too speculative to be used as a basis for concluding that the amount-in-controversy requirement was satisfied)). Damages that are too speculative cannot be used as a basis for concluding that the amount in controversy is satisfied.

In his Complaint, Plaintiff contests the veracity of Defendant's $3,194.28 lien on 3345 Sylvanhurst Road and its $3,614.79 lien on 942 Nela View Road. (Doc. No. 1, ¶ 8.) He alleges that these liens hindered the marketability of those properties and caused him to suffer compensatory damages in excess of $200,000. Plaintiff explains that the damages stem from "lost profits, carrying costs, and pre-judgment interest." (*Id*., ¶¶ 16, 21.) Plaintiff breaks down these damages with more specificity in the Declaration attached to the Motion for Default Judgment. *See* (Doc. No. 16-1.) He calculates that Prop3 incurred lost profits of $70,333 for the property at 942 Nela View Road and $50,333 for the property at 3345 Sylvanhurst Road. (Doc. No. 22, PageID# 132.) He explained that:

> This calculation is based on: (a) acquisition cost of $92,000 for the property at 942 Nela View Road and $112,000 for the property at 3345 Sylvanhurst Road; (b) projected rehab cost of $45,000 per property to bring it to market-ready condition (including approximately $15,000 for kitchen updates, $10,000 for bathroom renovations, $10,000 for flooring and painting, and $10,000 for electrical, plumbing, and miscellaneous cosmetic work, consistent with local averages for

> moderate rehabs on similar properties); (c) expected sale price of $207,333 per property based on the average of these three recent nearby sales comparables (2279 N Taylor Rd, Cleveland, OH 44112 sold March 2025 for $240,000; 1019 Nelaview Rd, Cleveland, OH 44112 sold April 2025 for $194,000; 3385 Rosedale Rd, Cleveland, OH 44112 sold July 2025 for $188,000). The liens directly caused the loss by clouding title and preventing marketability, resulting in net lost profit of $70,333 for the 942 Nela View Road property ($207,333 projected sale minus $92,000 purchase minus $45,000 rehab) and $50,333 for the 3345 Sylvanhurst Road property ($207,333 projected sale minus $112,000 purchase minus $45,000 rehab).

(Doc. No. 16-1, PageID# 132.) In summary, Plaintiff intended to renovate the properties and sell them for a profit. He argues that the liens prevented him from making this sale. Plaintiff adds that Prop3 suffered an additional "$100,000 in lost profits from two subsequent property flips that could not be funded because the encumbered properties could not be sold." (Doc. No. 22, PageID# 132.) He asserts that Prop3 suffered damages totaling $220,666, which is well above the $75,000 amount in controversy. (*Id.*)

There is one glaring issue with Plaintiff's calculation. This calculation assumes that the properties have been "flipped" and listed at a retail price of $207,333 each. *See* (Doc. No. 16-1, ¶ 2.) These "lost profits" were calculated accounting for "the *projected* rehab cost of $45,000 per property *to bring it* to market-ready condition (including approximately $15,000 for kitchen updates, $10,000 for bathroom renovations, $10,000 for flooring and painting, and $10,000 for electrical, plumbing, and miscellaneous cosmetic work, consistent with local averages for moderate rehabs on similar properties)." (*Id.*) (emphasis added). Plaintiff also claims an additional $100,000 in lost profits from two flips that could not be completed because "the encumbered properties could not be sold." (Doc. No. 22, PageID# 132.) However, based on Plaintiff's own allegations, the properties have not been sold because they have not been "flipped," not because the liens cloud the title.

Here, Plaintiff admits that Prop 3 has not yet renovated the properties and prepared them for

resale. Yet he argues that the liens prevented Prop3 from selling the properties and reaping these profits (and taking on future projects doing the same). Drawing this inference would require this Court to assume, among other things, that Prop3 will renovate the properties, approximately double the properties' value through the renovations, and that buyers will refuse to purchase either property because each has a lien that is 2-3% of the list price. Plaintiff cannot use these "lost profits" to satisfy the amount in controversy when they are highly speculative.[6]

Thus, Plaintiff has not made a claim for damages sufficient to exceed the $75,000 amount in controversy requirement.

## V. Conclusion

For the reasons set forth herein, Plaintiff's Motion (Doc. No. 16) and Defendant's Motion to Dismiss and Motion to Strike (Doc. Nos. 21, 23) are denied as moot. Having concluded that it lacks subject matter jurisdiction over Plaintiff's claim, this Court dismisses this action without prejudice.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE

Date: September 17, 2026

[6] In the Complaint, Plaintiff alleges that Defendant failed to meet its obligations under its remodeling contract with Prop3. (Doc. No. 1, ¶ 7.) However, that purported failing is not a part of this Court's amount in controversy analysis because Plaintiff does not bring a breach of contract claim against Defendant. Instead, he brings a slander of title claim against Defendant, which permits Plaintiff to recover damages for "[r]ecoverable pecuniary loss," which is defined as "'(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.'" *Green v. Lemarr*, 744 N.E.2d 212, 227 (Ohio App. 2d Dist. 2000) (citation omitted).